**Antonio BRANDO, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civil No. 95–3266.**

United States District Court, D. New Jersey.

May 23, 1997.

James D. Muirhead, Hackensack, NJ, for Plaintiff.

John C. Jeannopoulos, Asst. U.S. Atty., Newark, NJ, for Defendant.

## MEMORANDUM OPINION

WOLIN, District Judge.

Plaintiff Antonio Brando ("Brando") brought this action pursuant to 42 U.S.C. § 405(g) (1996) for review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Brando's application for disability insurance benefits. Brando alleges that Administrative Law Judge "ALJ" Frederick Harap's ("Harap") decision was not supported by substantial evidence. At issue are the date of the expiration of coverage and the date of the onset of the disability. ALJ Harap concluded that Brando's insured status expired on December 31, 1990 and that the onset of Brando's disability was July 8, 1992. In support of his appeal, Brando claims that the ALJ erred in finding that Brando was not disabled prior to December 31, 1990 or, alternatively, that Brando was not insured for disability through 1993 or 1994. After a review of the record, this Court finds that there is substantial evidence to support the ALJ's decision. Therefore, for the reasons discussed below, the Court will affirm the Commissioner's decision denying benefits to Brando.

## BACKGROUND

Brando applied for Social Security Disability benefits on September 23, 1992, claiming an onset date of disability of April 7, 1989. He alleged that he had been disabled due to chronic ischemic heart disease with angina. The Commissioner denied the application initially and upon reconsideration. Brando requested a hearing before an ALJ, and ALJ Harap held a hearing on October 15, 1993. Because the plaintiff had submitted amended income tax returns to the Internal Revenue Service ("IRS") in an effort to secure additional quarters of disability coverage from

the Social Security Administration ("SSA") and because the ALJ's decision depended on the disposition of these submissions by the Commissioner, ALJ Harap did not issue his decision until October 5, 1994.

In his decision, ALJ Harap found that (1) Brando met the disability insured status requirements of the Social Security Act ("the Act") on April 7, 1989, the alleged onset date of the disability, through December 31, 1990; (2) while Brando's medical evidence established severe unstable angina, he did not have an impairment or combination of impairments medically equivalent to one listed in Appendix 1 of the regulations promulgated under the Act, see 20 C.F.R. § 404.1520(d) (1996); (3) Brando's allegations of pair and other symptoms were not entirely credible or supported by the medical evidence; (4) Brando had the residual functional capacity[1] to perform work related activities except for work involving lifting and carrying more than 20 to 25 pounds; and (5) Brando's past work as a barber did not require the performance of work related activities precluded by the above limitations and, thus, his impairments did not prevent him from performing his past relevant work. Therefore, ALJ Harap concluded that Brando was not disabled within the meaning of the Act and denied him disability benefits.

Brando then filed for review with the Office of Hearings and Appeals (the "Appeals Council"). On March 31, 1995, the Appeals Council reviewed the ALJ's decision and confirmed the Commissioner's final decision; the Appeals Council, however, granted Brando's request to submit additional evidence. On May 30, 1995, after reviewing the additional evidence, the Appeals Council again confirmed the Commissioner's final decision. On July 17, 1995, Brando petitioned this Court to review the Commissioner's final decision.

## DISCUSSION

### I. Standard of Review for Disability Benefits

An administrative decision to deny disability benefits will be upheld on review if sup-

ported by "substantial evidence." 42 U.S.C. § 405(g) (1996); see also Stunkard v. Secretary of Health and Human Serv., 841 F.2d 57, 59 (3d Cir.1988). "Substantial evidence" is less than a preponderance of the evidence, but has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); see also Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980). Furthermore, while administrative findings are afforded deference, this Court nevertheless retains a responsibility to scrutinize the entire record and to reverse the ALJ's decision if it is not supported by substantial evidence. See Smith v. Califano, 637 F.2d 968, 970 (3d Cir.1981) (citation omitted). That the record supports an inconsistent conclusion does not undermine the ALJ's decision so long as there is substantial evidence to support it. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986) (determining that the inquiry of the district court was not whether the ALJ could have reasonably made a different finding based on the record but rather whether the ALJ's actual findings are supported by substantial evidence); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972); Woodworth v. Bowen, 679 F.Supp. 1194, 1198 (D.N.J.1987), aff'd without op., 845 F.2d 1019 (3d Cir.1988); see also Consolo v. Federal Maritime Comm., 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (inconsistent conclusions from the evidence do not prevent an administrative agency's finding from being supported by substantial evidence).

### II. Expiration Date of Insured Status

A claimant who is found disabled may not be paid disability insurance benefits unless the claimant meets the insured status requirements of 42 U.S.C. § 423(c) (1996).

---

1. Residual functional capacity is defined as what an individual "can still do despite [his] limita-

tions." 20 C.F.R. § 404.1545 (1996).

Brando alleges that he was insured for disability through 1993 or 1994. *See* Compl. ¶ 7. The ALJ, however, found that Brando's insured status expired on December 31, 1990. *See* Tr. at 32.[2] An individual is insured for the purposes of entitlement to a period of disability insurance benefits if he has the requisite quarters of coverage. *See* 42 U.S.C. §§ 413, 423(c)(1) (1996); 20 C.F.R. §§ 404.101, 404.130 (1996). The number of quarters needed varies depending on the individual's age, but an individual needs at least six (6), but not more than forty (40) quarters to be fully insured. *See* 20 C.F.R. § 404.110(b)(1) (1996).

The Commissioner is required to maintain records of a claimant's earnings as evidence of the amount of wages and self-employment income derived by a claimant and the periods in which such income was derived. *See* 42 U.S.C. § 405(c)(3) (1996). Conversely, the absence of an entry in such records is evidence that no wages were paid or that no self-employment income was derived during that period. *See id.* Based on Brando's Earnings Record and the attendant quarters of coverage as established by the SSA, ALJ Harap determined that Brando's disability insurance expired on December 31, 1990. *See* Tr. at 19.

■ Brando, however, sought to secure additional quarters of coverage from the SSA by filing amended tax returns with the IRS. ALJ Harap, therefore, agreed to postpone a final decision on Brando's case pending the disposition of the amended tax returns. Thus, in September, 1993, Brando filed amended self-employment tax returns for the years 1985, 1986, 1987, and 1988. *See* Tr. at 237–326.

■ The Commissioner's records may be corrected to eliminate any errors, whether inclusion or omission, for a period of three years, three months, and fifteen days following the end of any calendar year. *See* 42 U.S.C. §§ 405(c)(1), (c)(4), and (c)(5) (1996);

20 C.F.R. § 404.802 (1996). Following this time limitation period, the Commissioner's records are entitled to a statutory presumption of correctness. *See* U.S.C. § 405(c)(4) (1996); 20 C.F.R. § 404.803 (1996). While there are ten exceptions to these limitations, *see* 42 U.S.C. § 405(c)(5)(A)–(J) (1996), none applies in the instant case. The stringent provisions on correction of earnings records for self-employed individuals were drafted intentionally by Congress to avoid claims based on earnings in periods many years past for which here could be no effective rebuttal. *See Weisbraut v. Secretary of Health and Human Servs.,* 757 F.2d 83, 85 (3d Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985).[3]

■ After the expiration of the time limitation period, a claimant may document self-employment income only by submitting a timely filed income tax return. *See* 42 U.S.C. §§ 405(c)(4)(C), (c)(5)(F); *Jabbar v. Secretary of Health and Human Serv.,* 855 F.2d 295, 296 (6th Cir.1988); *Burke v. Secretary of Health and Human Serv.,* 680 F.2d 1128, 1130 (6th Cir.1982); *Shore v. Califano,* 589 F.2d 1232, 1238 (3d Cir.1978). Thus, amended tax returns can only be used to document self-employment income if filed prior to the expiration of the time limitation period.

Brando filed his amended tax returns for the years 1985 through 1988 in September, 1993. The time limitation period to correct the Commissioner's records for 1985 earnings expired on April 15, 1989; for 1986 earnings it expired on April 15, 1990; for 1987 earnings it expired on April 15, 1991; for 1988 earnings it expired on April 15, 1992. Because the amended tax returns were submitted after the expiration of the time limitation period, there is a conclusive presumption that the Commissioner's records accurately reflect Brando's income. *See* 42 U.S.C. § 405(c)(4)(C); 20 C.F.R. § 404.822 (1996); *Smith v. Shalala,* 910 F.Supp. 152,

---

**2.** Tr. refers to the Transcript of the entire record of the proceedings related to this case dated August 22, 1995.

**3.** The self-employed had initially been excluded from the Social Security program, primarily because a feasible method of obtaining reports of

their income had not been devised. *See Weisbraut,* 757 F.2d at 85. Congress only extended Social Security to the self-employed in 1950, when it was determined that income tax returns could prove self-employment income. *See id.*

159 (D.N.J.1995). Thus, Brando could not secure additional quarters of disability insurance coverage with the amended tax returns. Consequently, ALJ Harap properly determined that Brando's insured status expired on December 31, 1990.

### III. Procedure for Determining Whether a Claimant is Disabled

■ Brando is entitled to disability benefits only if he became disabled, within the meaning of the Act, prior to December 31, 1990. The regulations promulgated under the Act establish a five-step sequential evaluation procedure to determine whether a disability claimant is disabled. *See* 20 C.F.R. § 404.1520 (1996). In the first two steps, the plaintiff must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability and (2) that he suffers from a "severe impairment" or "combination of impairments." *See* 20 C.F.R. §§ 404.1520(a)–(c) (1996). If the plaintiff is unable to meet these burdens, benefits are denied.

If the plaintiff carries these burdens, the ALJ proceeds to step three and decides whether the plaintiff's impairment is equal to or exceeds one listed in Appendix 1 of the regulations (the "Listing of Impairments"). *See* 20 C.F.R. § 404.1520(d) (1996). If it does, a presumption of disability applies, and the plaintiff is automatically entitled to disability benefits. *See id.* If it does not, the ALJ proceeds to step four.

In step four, the ALJ considers whether the plaintiff's residual functional capacity is sufficient to allow him to perform his prior line of work. *See* 20 C.F.R. § 404.1520(e) (1996). If so, the plaintiff is "not disabled" and will be denied disability benefits. *See id.* If not, the ALJ proceeds to step five, under which the plaintiff is entitled to disability benefits unless the ALJ can demonstrate that the plaintiff can perform other "substantial gainful work." *See* 20 C.F.R. § 404.1520(f) (1996).

### IV. Review of the ALJ's Decision

ALJ Harap complied with the five-step procedure established by the regulations. First, the ALJ determined that Brando had not engaged in substantial gainful activity since April 7, 1989, the alleged onset date of his disability. *See* Tr. at 21. Next, pursuant to step two, the ALJ determined that Brando suffered from an impairment—severe unstable angina. *See id.* In step three, the ALJ found that Brando did not have an impairment or combination of impairments listed in, or medically equivalent to one listed in, Appendix 1 of the regulations. *See id.* In addition, ALJ Harap concluded that Brando's complaints of subjective pain were not entirely credible or supported by the medical evidence. *See id.*

Proceeding to the fourth step, the ALJ evaluated Brando's residual functional capacity. The ALJ found that Brando's medical condition prevented him from lifting and carrying more than twenty to twenty-five pounds. *See id.* at 22. Because Brando's former job as a barber did not require the performance of work related activities precluded by the above limitations, the ALJ determined that Brando could return to his prior position. *See id.* ALJ Harap, therefore, did not reach step five.

In his brief, Brando claims ALJ Harap erred by not eliciting testimony from him. *See* Pl.'s Br. at 4. Brando complains that he did not testify because it was his understanding that he would be allowed to have a new hearing if the amended tax returns did not extend coverage. *See id.* To the contrary, however, Brando chose to present no testimony and did not dispute any of the ALJ's findings at the hearing. *See* Tr. at 31–38. Specifically, Brando agreed that his insured status expired on December 31, 1990 and that there was no history of a disability prior to July 8, 1992. *See id.* at 35.

The record illustrates that ALJ Harap carefully reviewed the medical evidence, or more precisely the lack of medical evidence furnished by Brando. Indeed, Brando's medical file is essentially devoid of medical evidence prior to his hospitalization on July 8, 1992, for a heart attack. The only medical evidence Brando submitted to ALJ Harap of any disabling condition prior to July 8, 1992, was the results of two cardiac tests, one in 1984 and the other in 1986. *See id.* at 173–

77. The doctor who reviewed the 1984 test noted that Brando was in "good physical condition" with no evidence of stress induced ischemia, no ventricular ectopy,[4] and no symptoms. *See id.* at 174. Furthermore, the doctor noted on the 1986 cardiac stress evaluation test that there were no arrhythmias (disturbances in the rhythm of the heartbeat) and "no changes of significance." *See id.* at 176. Accordingly, while ALJ Harap found that Brando became disabled after the 1992 heart attack, he concluded that Brando was not disabled prior to December 31, 1990—the expiration date of his insured status. *See id.* at 32.

Brando chose to submit additional medical evidence from what appears to be his personal physician, Dr. Balsamo, to the Appeals Council. *See id.* at 327–34. Dr. Balsamo's records, dated November 9, 1982 through February 3, 1989, indicate that Brando was treated for an assortment of minor complaints, such as excessive gas and dizziness. *See id.* at 328–34. Dr. Balsamo's notes, however, reveal normal test results and no significant abnormal findings. Moreover, Brando worked through April 7, 1989, making any analysis of disability prior to that date academic. As provided in 20 C.F.R. § 404.1520(b) (1996), if a claimant is working and the work is a substantial gainful activity the ALJ will find that the claimant is not disabled regardless of the claimant's medical condition. Furthermore, from April 7, 1989, the time he stopped working, to December 31, 1990, the expiration date of his insured status, Brando proffers no evidence that he had any medical condition which required treatment.

 Substantial evidence is defined as such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (quotation omitted). The rec-

ord demonstrates that ALJ Harap properly considered all the relevant evidence provided by Brando before reaching his conclusion.[5] Accordingly, because the Court finds that substantial evidence supported the ALJ's decision, the Court will affirm.

### CONCLUSION

For the reasons set forth herein, this Court concludes that the ALJ's decision to deny Brando disability benefits was supported by substantial evidence. Accordingly, the Court will affirm the Commissioner's final decision denying Brando disability benefits.

---

4. Ventricular ectopy is a condition where the heart is motivated to beat by an abnormal source.

5. Even if Brando had chosen to testify regarding his disability, subjective testimony of disabling impairments cannot, by itself, be the basis for a finding of disability. *See Green v. Schweiker,* 749 F.2d 1066, 1071–(3d Cir.1984). Rather, Brando must demonstrate by medical signs and findings that an underlying condition exists that can rea-

sonably be expected to produce the symptomatology alleged. *See id.* An ALJ has the discretion to evaluate the credibility of the claimant's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the symptomatology. *See LaCorte v. Bowen,* 678 F.Supp. 80, 83 (D.N.J. 1988). Thus, Brandon's testimony, which would be unsupported by his medical evidence, could not be the basis for a finding of disability.